RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0080p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DEVIN NAGALE MITCHELL and PRESTON D.
CULPEPPER,

> *Plaintiffs-Appellants,*

    No. 04-2219

    *v.*

MARK BOELCKE, LENNY ROTHROCK, and DALE
EASTON, individually and in their capacities as City
of St. Joseph police officers,

> *Defendants-Appellees.*

---

Appeal from the United States District Court
for the Western District of Michigan at Kalamazoo.
No. 02-00106—Richard A. Enslen, District Judge.

Argued: December 8, 2005

Decided and Filed: March 1, 2006

Before: DAUGHTREY, GILMAN, and SUTTON, Circuit Judges.

---

## COUNSEL

**ARGUED:** Roosevelt Thomas, WESTRATE & THOMAS, Dowagiac, Michigan, for Appellants.
Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO, Livonia, Michigan, for Appellees.
**ON BRIEF:** Roosevelt Thomas, WESTRATE & THOMAS, Dowagiac, Michigan, for Appellants.
Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO, Livonia, Michigan, for Appellees.

---

## OPINION

---

    MARTHA CRAIG DAUGHTREY, Circuit Judge. In this civil rights action, filed under 42 U.S.C. § 1983, plaintiffs Devin Mitchell and Preston Culpepper appeal from the district court's denial of their motion for a new trial following a jury verdict in favor of defendants Mark Boelcke, Dale Easton, and Lenny Rothrock. The plaintiffs assert that defendants Easton and Rothrock did not have reasonable suspicion to detain them in connection with an investigation of a neighborhood assault and robbery. They further claim that all three defendants engaged in selective law enforcement when they charged only African-American suspects in connection with the incidents. For the reasons set out below, we conclude that the district court erred in denying plaintiff Culpepper's motion for a new trial. In all other respects, however, the district court appropriately

resolved the issues before it.  As a result, we affirm the judgment of the district court in part, reverse in part, and remand for a new trial on Culpepper's claim of detention without reasonable suspicion.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

During the evening hours of June 13, 2000, while responding to a call for police assistance, Officer Mark Boelcke of the Saint Joseph (Michigan) Police Department was flagged down by Benjamin Tourney, who explained that he had been assaulted and robbed by a group of four or five males, some black, some white, all wearing white T-shirts.  Daniel Churchill, a witness to the crime who was still at the scene, also informed Boelcke that he (Churchill) knew two of the assailants, identifying them as Jamie Otis and Antonio Sherman.  Boelcke then broadcast a request for assistance in apprehending suspects, a request that was answered by Officers Easton and Rothrock.

Patrolling the area near the crime scene, Easton observed three African-American males, Devin Mitchell, Antonio Sherman, and Ted Palmer, and a white male, Jamie Otis, walking together just a "few hundred feet" from the site of the assault and robbery.  Although only one of the four men, plaintiff Mitchell, was wearing a white T-shirt at the time, Easton immediately recognized Palmer and Otis from previous encounters, knew where they lived, and found it unusual that they were in the area where he found them.  In light of the fact that Mitchell was wearing a white T-shirt; that the group consisted of Otis, a white male, and three black males; that Otis and Sherman had been identified by Churchill as among the assailants; and that they were in an area they did not normally frequent, Easton detained the four men and brought them to the crime scene to "show them to the victim."

Simultaneously, Officer Rothrock was patrolling an area a few blocks from the crime scene in an effort to find suspects or witnesses and saw plaintiff Culpepper on the sidewalk in front of his home.  Despite the fact that Culpepper was wearing a faded blue T-shirt, not a white T-shirt, Rothrock stopped and questioned Culpepper, who denied knowing anything about the robbery.  Because Culpepper was unwilling to get into Rothrock's patrol car, Rothrock directed him to walk to the crime scene. Culpepper complied. Rothrock later confirmed at trial that although Culpepper was not in physical custody, he was detained at that time, *i.e.*, not free to refuse the officer's order.

At the scene, Tourney positively identified all five of the men rounded up and presented by the police as his attackers.  The five suspects were then taken to the police station for questioning before being released.  Eventually, the charges brought against plaintiffs Mitchell and Culpepper were dismissed, leading them to file suit against the police officers and the City of Saint Joseph, alleging both selective enforcement of the law based on race and violations of the plaintiffs' Fourth Amendment rights to be free from unreasonable detention.  The case proceeded to trial before a jury, resulting in a verdict in favor of all defendants on all claims.  The plaintiffs filed a timely motion for a new trial.  The motion was denied, and this appeal ensued.

## II. *DISCUSSION*

### A.  Review Of The Denial Of A Motion For A New Trial

We review a district court's denial of a motion for a new trial under the highly deferential abuse-of-discretion standard.  *See Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994).  "We will find an abuse of discretion only when [we have] 'a definite and firm conviction that the trial court committed a clear error of judgment.'"  *Id.* (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)).

In pertinent part, Federal Rule of Civil Procedure 59(a) provides that new trial motions may be granted, in an action involving a trial by jury, "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  Generally, this

provision has been interpreted to mean that a district court should grant a motion for new trial only "when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045-46 (6th Cir. 1996). Here, plaintiffs Mitchell and Culpepper contend that the jury's verdict that the police had reasonable suspicion to detain them for the assault and robbery of Benjamin Tourney was against the weight of the evidence. Mitchell and Culpepper also maintain that the evidence adduced at trial in this matter clearly established selective enforcement of the laws by the police against African-American suspects.

Before assessing these claims, we note that the officers' sole defense to the Fourth Amendment claims is that sufficient evidence supported the jury's conclusion that the officers had "reasonable suspicion to detain" the plaintiffs. They have not attempted to justify the verdict on the alternative ground that they were entitled to qualified immunity. Thus, the question "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *Saucier v. Katz*, 533 U.S. 194, 202 (2001), is not before us.

## B. Reasonable Suspicion To Detain Plaintiff Mitchell

In *Terry v. Ohio*, 392 U.S. 1, 30 (1968), the United States Supreme Court held that law enforcement officers may briefly detain an individual for investigative purposes on reasonable suspicion that the suspect either has been or is about to be involved in some criminal activity. When determining whether such "reasonable suspicion" is in fact present in any given situation, reviewing courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

In this case, the jury, by its verdict, determined that Officer Easton had reasonable suspicion of plaintiff Mitchell's involvement in criminal acts that justified the officer's brief detention of him. Despite Mitchell's arguments to the contrary, the evidence adduced at trial supports such a conclusion. The jury obviously credited the testimony of Officer Boelcke that an eyewitness to the crimes had identified Jamie Otis and Antonio Sherman as two of the men involved in the assault and robbery. Boelcke also relayed to officers in the field that both black and white males were involved in the crimes and that the suspects were wearing white T-shirts at the time of the beating and robbery. While searching the immediate area in which the crime was committed, Easton happened upon four young men, three of whom were African-American, one of whom was white. One of the men was wearing a white T-shirt and another individual, Jamie Otis, was known to Easton and had been identified as one of the assailants. Even though only Mitchell was dressed in a white T-shirt at that time Easton saw the young men, these observations, coupled with the fact that Jamie Otis and Ted Palmer, another member of the group that the officer knew, were not usually seen in that area of town justified Easton's suspicion that the men could have been involved in the criminal activity under investigation and that a brief detention of them was warranted.

"Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* (citations omitted). In this case, the information known to Easton and the facts observed by him fell within these parameters and justified the detention of plaintiff Mitchell. The district court did not abuse its discretion in denying the plaintiff's motion for a new trial based upon the allegation that the jury's verdict that Mitchell's Fourth Amendment rights were not violated by the detention was against the weight of the evidence.

## C.  Reasonable Suspicion To Detain Plaintiff Culpepper

The fact that the jury's verdict regarding *Mitchell's* detention claim was supported by the evidence adduced at trial does not, however, necessarily insulate the verdict against Culpepper from challenge.  In fact, Officer Rothrock's detention of Culpepper was based upon no articulated facts or observations other than that the officer knew Culpepper and, following the broadcast of the robbers' description, saw Culpepper in the general vicinity of the crime.  But, at the time of that observation, Culpepper was not in the company of any other individuals and was wearing a faded blue, not a white, T-shirt.  He was on the sidewalk in front of his house, which, according to his mother, he had just left to go to a friend's house on foot.  Testifying at trial, Culpepper's mother said that she saw the initial conversation between Officer Rothrock and her son and heard Rothrock direct him to go to the scene of the crime for identification purposes.  She apparently tried to persuade the officer that her son had not been involved in the robbery but was not successful.

To assume that a young man lawfully walking on the sidewalk in front of his home and dressed differently from the described assailants is somehow involved in the crime being investigated stretches even the concept of a "hunch" beyond its breaking point.  The record before us on appeal contains absolutely no evidence to support the jury's verdict that the police had a "reasonable" suspicion that plaintiff Culpepper was involved in criminal activity at or before the time of his detention.  And, obviously, the defendants' contention on appeal that Culpepper's subsequent identification at the scene supports the jury's verdict begs the question – events that occurred after the detention cannot retroactively be taken to justify it as reasonable.  *See*, *e.g.*, *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th cir. 2005) (probable cause to arrest is judged by examining facts and circumstances that existed "at that moment"); *see also Garmon v. Lumpkin County*, 878 F.2d 1406, 1409 (11th Cir. 1989) (not even a subsequent indictment can retroactively provide probable cause for an arrest that has already taken place).

In the absence of any reasonable basis to support Culpepper's detention by Officer Rothrock, we conclude that the jury's verdict was against the clear weight of the evidence. The district court's denial of plaintiff Culpepper's motion for a new trial therefore constituted an abuse of discretion.

## D.  Selective Enforcement of Criminal Laws

In a final appellate issue, the plaintiffs submit that the jury disregarded overwhelming evidence that defendants Boelcke, Easton, and Rothrock engaged in selective law enforcement in violation of the plaintiffs' constitutional rights.  According to the plaintiffs, Benjamin Tourney identified a group of both black and white individuals who attacked and robbed him, but the defendants chose to press criminal charges only against African-American individuals. Jamie Otis, a white male, was detained by the police but was not formally charged with any criminal offense.

We review selective enforcement claims "according to ordinary Equal Protection standards, which require a petitioner to show both a discriminatory purpose and a discriminatory effect," *Gardenshire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000), and apply a three-part test to determine whether selective enforcement has indeed occurred:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with a discriminatory purpose.  Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Id.* at 319.

Without question, the plaintiffs, both African-Americans, have made a prima facie showing that a similarly-situated white individual (Jamie Otis) was not prosecuted in this matter. They cannot, however, point to any evidence indicating that the prosecution of them, but not of Otis, was initiated with a discriminatory purpose. Officer Boelcke testified that Otis was first detained because initially "Benjamin Tourney indicated that Jamie Otis struck him." Later, however, Tourney "admitted that Jamie Otis was [not] in position to strike him, he was behind him . . . ." Thus, the different treatment of the plaintiffs and of Otis was not based on the race of the individuals but rather on the circumstances of their alleged involvement in the criminal episode.

Similarly, Officer Easton testified that he did not and still does not handle cases differently based upon the race of the suspects. He stated, "There is no difference. I mean when you're handling a complaint, you handle the complaint, you don't look at the color, you just look at the people and talk to the people and the witnesses, get your information. There is no color." Likewise, Officer Rothrock testified that plaintiff Culpepper's "race had nothing to do with" his arrest.

The plaintiffs have offered no evidence of a discriminatory purpose in the defendants' arrests of Mitchell and Culpepper. The district court thus did not abuse its discretion in concluding that the jury's verdict on the selective enforcement claim was not unreasonable.

### *CONCLUSION*

In order to prevail on appeal, the plaintiffs must establish that the district court abused its discretion by concluding that the jury's verdicts were not against the weight of the evidence. They have failed to meet this onerous burden in connection with their claims of selective enforcement. Plaintiff Devin Mitchell has likewise failed to establish an abuse of discretion with regard to his motion for a new trial on his Fourth Amendment claim. We conclude, however, that the weight of the evidence adduced at trial is against the jury's verdict finding that defendant Rothrock acted reasonably in detaining plaintiff Culpepper, in the absence of any basis for concluding that Culpepper had engaged in the criminal activity under investigation.

We therefore AFFIRM the judgment of the district court in part, REVERSE in part, and REMAND for a new trial on plaintiff Culpepper's Fourth Amendment claim.