**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0510n.06

**No. 07-1738**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**ROBERT MITCHELL,**

      **Plaintiff-Appellant,**

**v.**

**COUNTY OF WAYNE,**

      **Defendant-Appellee.**

_____/

**FILED**

**Jul 24, 2009**

LEONARD GREEN, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

**BEFORE:    CLAY and McKEAGUE, Circuit Judges; and HOLSCHUH, District Judge.**[*]

**CLAY, Circuit Judge.**  Plaintiff Robert Mitchell ("Mitchell") appeals the district court's

order denying his motion for judgment as a matter of law or for a new trial, following a jury verdict

in favor of Defendant County of Wayne (the "County") with respect to Mitchell's claim under the

Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*  On appeal, Mitchell contends that

he presented sufficient evidence that the County interfered with his FMLA rights, and retaliated

against him for exercising those rights, when it terminated him upon his return from approved FMLA

leave.  For the following reasons, we **AFFIRM** the district court's order.

**BACKGROUND**

**I.      Procedural History**

_____

[*]The Honorable John D. Holschuh, United States District Judge for the Southern District of
Ohio, sitting by designation.

On September 27, 2005, Mitchell filed a complaint against the County, retired County Undersheriff Harold Cureton ("Cureton"), and County Sheriff Department Commander Karen Kreyger ("Commander Kreyger"), alleging violations of the FMLA and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"). In the complaint, Mitchell alleged that Commander Kreyger terminated his employment at the County Sheriff's Department because Mitchell failed to appear for a scheduled drug test on February 23, 2005, the day he began a period of sick leave pursuant to the FMLA. The complaint alleged that Commander Kreyger's actions constituted interference with, and retaliation for, Mitchell's exercise of his FMLA rights. On October 14, 2005, the district court declined to exercise supplemental jurisdiction over the PWDCRA claim, dismissing the claim without prejudice because it found that trying the additional state law claim could confuse the jury. On July 25, 2006, Defendants filed a motion to dismiss or for summary judgment, a motion that the court denied on December 8, 2006.

The district court held a jury trial from March 19 to March 22, 2007.

## II.    Trial Testimony

Mitchell began working for the Sheriff's Department in 1993, and subsequently held a variety of posts, most recently performing floor security at jails and hospitals. During the time at issue in this case, Mitchell was working a daytime shift from 7:00 a.m. to 3:00 p.m.

Mitchell testified that during his twelve years of employment, he was subjected to three to five drug tests, and tested negative each time. Mitchell testified that on February 22, 2005, one of his supervisors, Sergeant Khalib Sabbough ("Sergeant Sabbough"), informed him that he would need to appear for a random drug test the following day at a local hospital. Sergeant Sabbough handed

Mitchell a formal notice of the scheduled test.[1]  Sergeant Sabbough testified that the Sheriff's Department personnel office was responsible for scheduling employees' drug tests, and that he was only responsible for serving the order on Mitchell.

Mitchell testified that at approximately 7:00 p.m. on February 22, he fell on some ice while off duty and injured his lower back.  The next morning, Mitchell called the Sheriff's Department at approximately 5:20 a.m, when the night shift was still on duty; Mitchell could not recall the person with whom he spoke, other than that it was a "midnight shift sergeant or whoever." (Trial Tr. Vol. 2 at 36-37, 107.)  Mitchell called the midnight shift because he was aware of the Sheriff's Department's policy requiring employees calling in sick to do so at least one hour before their shift begins.  He informed the person on the phone that he had a test scheduled for that day, but that he would not be able to appear for it; although it is unclear from Mitchell's testimony whether he specifically identified "the test" as a drug test, he acknowledged that he had said in his deposition that he was not sure whether he had referred to it as a drug test.  The person took Mitchell's name and the call ended.  Mitchell's parents arrived at his house shortly thereafter and drove him to a chiropractor, who treated him and advised him to stay off his feet for at least "the first couple weeks." (Trial Tr. Vol. 2 at 40.)  Mitchell testified that he did not see a medical doctor or go to an emergency room for his injury, and he did not take any prescription medication.

---

[1]Although the form indicated that the date of the testing was February 16, Sergeant Sabbough told Mitchell that the test was scheduled for the next day, February 23, and Mitchell testified that based on his conversation with Sergeant Sabbough, he assumed the date on the form was an error and that he was to report for the test the next day.

While at the chiropractor's office, Mitchell filled out the required FMLA leave notification forms and his mother faxed the forms to the Sheriff's Department for him. In the forms, Mitchell requested leave from February 23, 2005 through March 14, 2005. Mitchell recalled that later that day, he called John Asquini ("Asquini"), the Sheriff Department's senior personnel officer, to confirm that Asquini had received the FMLA forms, but did not mention to Asquini that he had been scheduled to take a drug test that day. Mitchell testified that this was the third period of FMLA leave that he took because of injuries to his lower back since July 2004, each time receiving approval from the Sheriff's Department personnel office.

Mitchell testified that he called the Sheriff's Department every morning for approximately six days to advise that he was still on leave. Around March 1, when Mitchell made his morning call, he spoke with Sergeant David Boisvert ("Sergeant Boisvert"), and asked him if it would be necessary to continue calling every day; he also told Sergeant Boisvert about his missed drug test. Sergeant Boisvert called Asquini, then got back on the phone with Mitchell and told him that "John Asquini says you're on leave." (Trial Tr. Vol. 2 at 49.) On March 7, 2005, while Mitchell was still on leave, he received a phone call from Commander Kreyger, informing him that she was revoking his police powers and writing up a Conduct Incident Report because Mitchell failed to appear for his scheduled drug test on February 23, 2005. On March 14, 2005, Mitchell submitted another set of FMLA forms, including a note from his chiropractor, stating that he needed to extend his leave until March 23, 2005.

Mitchell testified that on March 24, 2005, he went to the Sheriff's Department personnel office to provide notice that he was ready to return to work, but was informed that Commander

Kreyger did not approve of him returning to work, and that Commander Kreyger would call him shortly to discuss his situation. On March 25, 2005, Commander Kreyger called him into the office and issued him a Conduct Incident Report, which informed him that she was suspending him because of his failure to appear for his drug test on February 23, 2005. As part of the standard procedure for issuing a Conduct Incident Report, Commander Kreyger informed Mitchell that he had twenty-four hours to respond to its allegation. Mitchell wrote a short memo stating that he missed the drug test because he had injured his back the previous evening.

Mitchell testified that at an administrative review hearing on April 1, 2005 with Commander Kreyger and his union representative, he again explained his reason for missing the drug test, but Commander Kreyger told him that "it just looks suspicious." (Trial Tr. Vol. 2 at 57.) At the end of the administrative review, the union representative conferred with Commander Kreyger, and then informed Mitchell that he could return to work as long as he agreed to receiving random drug testing for the next year. Mitchell testified that although he did not have a problem with that condition, Commander Kreyger also told him that if he returned to work, she could place him on any shift she wanted to, regardless of his seniority rights; Mitchell asserted that when Mitchell refused to agree to that additional condition, Commander Kreyger terminated his employment.

During cross-examination, Mitchell acknowledged he had taken FMLA leave of four weeks in 1994, four weeks in 1995, almost a full year in 1996, "a couple of months" in 1998, and one month in 2000 for various injuries, before taking leave three times in 2004 and 2005 for his bad back. Mitchell testified that the County had never denied a request for medical leave during his twelve years of employment. Mitchell acknowledged that pursuant to his union's collective

bargaining agreement with the County, employees may be terminated for refusing to take a drug test.

Asquini, the senior personnel officer, confirmed that Mitchell faxed the FMLA forms requesting leave from February 23 to March 14, 2005. Asquini could not recall whether Mitchell had also called him on February 23, 2005 to confirm his receipt of the fax, but testified that if Mitchell had called him, he did not mention that his drug test was scheduled for that day. Asquini stated that he first learned that a drug test had been scheduled when Sergeant Boisvert called him around March 1, 2005 to relay Mitchell's message that he had missed the test.

Commander Kreyger testified that she first learned of Mitchell's failure to appear for his drug test on March 1, 2005, when she received a memorandum from the County's central personnel office that Mitchell had failed to appear for his drug test. Commander Kreyger testified that when she terminated Mitchell, she understood that he had begun an approved FMLA leave on the day of his scheduled drug test, but still issued the Conduct Incident Report because she considered Mitchell's failure to appear for his drug test or notify a supervisor that he would not be able to appear to be "refusing to follow an order." (Trial Tr. Vol. 4 at 12.) She testified that Mitchell did not provide a reason why he was unable to follow the order to appear for a drug test, and "[t]here's nothing in his rebuttal that excused him from that order." (Trial Tr. Vol. 4 at 22-23.) Commander Kreyger later elaborated, "the issue with . . . Mr. Mitchell at the time was that he was given an order to report for a drug screen. He signed for the order. He didn't report for the order and he did not call anybody to ask, What do you want me to do now?" (Trial Tr. Vol. 4 at 34.) Commander Kreyger stated that she did not factor Mitchell's FMLA leave into her decision to discipline him, and while she believed that Mitchell was "manipulating the system" and that the timing of his FMLA leave was "suspicious,

. . . my suspicion was not a factor in the case." (Trial Tr. Vol. 4 at 38, 39.) However, she stated that "I did take [into account] the fact that he did not make a call to anybody to get the [drug test] order changed when I knew that he did make a call that he wasn't coming to work. He did make calls to Sheriff's personnel about his FMLA paper, he did make calls to his parents to go to the chiropractor, but the only call that he never made was in regards to his drug testing order." (Trial Tr. Vol. 4 at 40.)

Commander Kreyger confirmed that, following the April 1, 2005 administrative hearing, she offered Mitchell a settlement, pursuant to which Mitchell would have returned to work and would have been subject to random drug testing for the next twelve months. Commander Kreyger denied that the settlement would have otherwise altered the conditions of Mitchell's employment. Commander Kreyger further testified that, when she informed Mitchell that under the agreement she would personally schedule his random tests, Mitchell "kind of laughed and said, [n]o way." (Trial Tr. Vol. 4 at 145.)

Commander Kreyger's testimony was consistent with that of Cureton, who at the time of Mitchell's termination was the undersheriff of the Sheriff's Department. Cureton testified that he and Commander Kreyger agreed to offer Mitchell his job back under the condition that he submit to random drug testing for twelve months, and without any loss of seniority rights.

Sergeant Sabbough, the supervisor who had served the drug test order on Mitchell, testified that the County did not have a written policy instructing employees what to do in the event that they had to miss a drug test. Although Sergeant Sabbough initially stated that he would not have believed that the failure to appear for a drug test due to injury would have constituted "a refusal" to take the test, he also stated that, when an employee is physically able to notify the Sheriff's Department that

he cannot appear for the test but fails to do so, the failure to notify could constitute a refusal. (Trial Tr. Vol. 3 at 52, 53.)

Sergeant Boisvert's testimony confirmed that when Mitchell called him around March 1, Mitchell told him that he had missed a drug test on February 23, 2005. Sergeant Boisvert testified that under Sheriff's Department rules, it is the employee's duty to inform a supervising sergeant or commander if the employee needs to miss a drug test, and that supervisor is then responsible for reporting the missed drug test to the personnel department. Sergeant Boisvert stated his belief that Mitchell's failure to appear for his drug test did not constitute a refusal to take the test because he "was incapable of carrying [the order] out." (Trial Tr. Vol. 4 at 93.) However, Sergeant Boisvert added that if Mitchell had been capable of notifying the Sheriff's Department that he was incapable of taking the test but failed to do so, such a failure "would not be in accordance with the order he was given." (Trial Tr. Vol. 4 at 93.)

At the close of evidence, the district court granted a stipulated order dismissing the claims against Commander Kreyger and Cureton with prejudice, because under the FMLA they could not be held liable as Mitchell's employer. Before the court submitted the case to the jury, Mitchell moved for judgment as a matter of law, and the court denied the motion. On March 22, 2007, the jury returned a verdict in favor of the County, finding in its verdict sheet that the County did not interfere with, or retaliate against, Mitchell's exercise of his FMLA rights. On April 4, 2007, Mitchell renewed his motion for judgment as a matter of law or for a new trial. The court again denied Mitchell's motion. Mitchell timely appealed.

**DISCUSSION**

## I. Standard of Review

This Court reviews *de novo* the district court's denial of a renewed motion for a judgment as a matter of law. *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004). Judgment as a matter of law is proper if the nonmoving party "'has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Id.* at 722 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000)).

This Court reviews the district court's denial of Mitchell's motion for a new trial pursuant to Rule 59 for abuse of discretion. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000). Reversal is warranted only if there is "a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (quotations and citation omitted). "[A] district court should grant a motion for new trial only when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Mitchell v. Beolcke*, 440 F.3d 300, 303 (6th Cir. 2006) (quotations and citation omitted).

## II. Sufficiency of the Evidence

"The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)). Upon return from FMLA leave, an employee is entitled "(A) to be restored by the employer to the position of employment held by the

employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). The parties agree that Mitchell validly exercised protected FMLA rights when he took a leave of absence from February 23, 2005 to March 14, 2003.

The FMLA recognizes two theories of civil liability: that an employer interferes with an employee's exercise of his or her FMLA rights, and that an employer retaliates against an employee for exercising his or her FMLA rights. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008). Mitchell claims the County violated the FMLA when it disciplined him and terminated his employment upon return from FMLA leave, because those acts constituted interference with his FMLA rights and retaliation for exercising those rights. On the jury verdict form, the jury separately answered "no" with respect to both of the theories.

## A. Interference

An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). Under the interference (or entitlement) theory of recovery, "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA–for example, a twelve-week leave or reinstatement after taking a medical leave." *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). "To prevail on an entitlement claim, an employee must prove that: (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." *Edgar v. JAC Products, Inc.*, 443 F.3d

501, 507 (6th Cir. 2006) (quotations and citation omitted). The parties agree that Mitchell satisfied the first four elements. Thus, the dispute focuses on whether the County's disciplining Mitchell upon his return and his subsequent termination constituted the denial of an FMLA benefit.

If an employer denies an employee the right to return to work from FMLA leave, such an act constitutes interference, regardless of whether the employer intended to interfere with the employee's FMLA rights. *Id.* However, "an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (6th Cir. 2005). Thus, "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Edgar*, 443 F.3d at 508. "If the employee cannot show that he was discharged because he took leave–or at least that his taking of leave was a negative factor in the employer's decision to discharge him–he cannot show a violation of the FMLA." *Pharakhone v. Nissan North America, Inc.*, 324 F.3d 405, 408 (6th Cir. 2003).

In the instant case, there was sufficient evidence adduced at trial for a reasonable jury to conclude that the County's decision to terminate Mitchell was based on a legitimate reason unrelated to his FMLA leave–i.e. that he had disobeyed an order.

First, the evidence supported the conclusion that Mitchell defied an order by failing to appear for the drug test or properly notify the Sheriff's Department that he would not be able to appear. Although Mitchell said that he told someone at the Sheriff's Department on February 23, 2005 that he had a "test" scheduled, he could not recall whether he even specified that the test was a drug test.

11

As Mitchell could not identify the person to whom he had spoken when he called on his first day of FMLA leave, the jury was entitled to discredit Mitchell's testimony that he even called the Sheriff's Department in the first place. More importantly, Sergeant Boisvert's testimony indicated that such notification, without more, would have been insufficient anyway, because Mitchell was required to notify a supervising sergeant or commander about his inability to appear for the test. Asquini testified that Mitchell did not mention the missed drug test when he called on February 23 to confirm Asquini's receipt of the FMLA forms, and by all accounts, no sergeant or supervisor learned of the missed drug test for several days. Both Sergeant Sabbough and Sergeant Boisvert testified that if Mitchell had been capable of calling in to report that he could not take the test but failed to do so, such a failure could be viewed within the Sheriff's Department as refusing to take the test. Thus, the jury could have concluded Mitchell's failure to notify constituted a violation of a rule of the Sheriff's Department.

Second, the jury could have reasonably concluded that Commander Kreyger's decision to terminate Mitchell was based upon his failure to obey the order to call regarding the drug test. Commander Kreyger testified that she terminated Mitchell because he failed to appear for a drug test, and failed to notify the Sheriff's Department that he would be unable to appear. Although Commander Kreyger admitted that she found the timing of Mitchell's FMLA leave "suspicious" and that she thought Mitchell might have been "manipulating the system[,]" she also testified that she did not take that suspicion into account when she terminated Mitchell's employment. The jury was entitled to believe her. *See United States v. Latouf*, 132 F.3d 320, 330-31 (6th Cir. 1997) ("[I]ssues of witness credibility are for the jury. This court entitles special deference to the jury's resolution

of questions of credibility.") (quotations and citations omitted). Cureton corroborated Commander Kreyger's account when he testified that the decision to terminate Mitchell was based solely upon his failure to follow the drug test order. The numerous times Mitchell previously took FMLA leave and was promptly reinstated upon his return also supported a finding that the County's reason for disciplining and then terminating Mitchell's employment was unrelated to his FMLA leave.

Mitchell argues that the County's explanation that it disciplined Mitchell because of his missed drug test constituted an admission that it interfered with his FMLA rights, because the County effectively admitted that it imposed an additional notification requirement beyond the requirements of the statute. To be sure, this Court has held that "the FMLA does not permit an employer to limit his employee's FMLA rights by denying them whenever an employee fails to comply with internal procedural requirements that are more strict than those contemplated by the FMLA." *Cavin v. Honda of America Manufacturing, Inc.*, 346 F.3d 713, 720 (6th Cir. 2003). In *Cavin*, the defendant terminated the plaintiff's employment specifically because he did not obey a call-in requirement for FMLA absences that was more stringent than required by the FMLA. *Id.* However, neither *Cavin* nor any other precedent of this Court has held that employees on FMLA leave need not comply with notification requirements unrelated to the employee's absence from the workplace. As our sister circuit has held, "[n]othing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave[.]" *Callison v. City of Philadelphia*, 430 F.3d 117, 121 (3d Cir. 2005). Nothing in the evidence suggests that Mitchell was physically incapable of making the required phone call to alert a supervisor that he would be unable

to appear for his test, and the jury could have found that Mitchell's failure to obey an order was not related to his absence from the workplace.

In sum, because there is a "legally sufficient evidentiary basis" for the jury to have concluded that Mitchell violated an order and that he was terminated for that reason, the district court properly denied Mitchell's motion for a judgment as a matter of law with respect to his interference theory. *See Noble*, 391 F.3d at 722.

**B.      Retaliation**

"It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). "This prohibition includes retaliatory discharge for taking leave." *Arban*, 345 F.3d at 403. A retaliation theory of recovery under the FMLA is different from an interference theory because under a retaliation theory, the intent of the employer matters. *Edgar*, 443 F.3d at 508. "The employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights." *Id.* Thus, employers may not "'discriminat[e] against employees . . . who have used FMLA leave,' nor can they 'use the taking of FMLA leave as a negative factor in employment actions.'" *Arban*, 345 F.3d at 403 (quoting 29 C.F.R. § 825.220(c)).

Mitchell's motion for a judgment as a matter of law fails for the same reason under the retaliation theory that it failed under the interference theory: the evidence was sufficient for the jury to conclude that the County did not terminate Mitchell's employment because of his exercise of FMLA rights, but because he failed to follow an order and either appear for his drug test or be

14

granted permission to miss it. The jury was entitled to find that Mitchell's decision to take FMLA leave did not factor into the County's decision at all, a finding that would be largely based upon an assessment of the credibility of the County's witnesses.

Accordingly, the district court properly denied Mitchell's motion for judgment as a matter of law. Finally, because the jury did not commit a clear error in judgment and there was no allegation of unfairness or bias in the conduct of the trial, the district court did not abuse its discretion in denying Mitchell's motion for a new trial. *See Barnes*, 201 F.3d at 820; *Mitchell*, 440 F.3d at 303.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.