NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0445n.06

Case No. 23-2103

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Nov 06, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| JOHNNY STRICKLAND, | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CITY OF DETROIT, MICHIGAN; CASEY | ) | MICHIGAN |
| SCHIMECK, | ) | |
|     Defendants-Appellants. | ) | OPINION |
| | ) | |

Before: SILER, GRIFFIN, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Johnny Strickland is a police officer with the Detroit Police Department. One day, Strickland found himself handcuffed by one of his coworkers while visiting a gas station. The fallout from the incident spawned a retaliation claim against the City of Detroit and an excessive-force claim against fellow police officer Casey Schimeck. A jury found in Strickland's favor on both claims. The City and Schimeck sought to overturn the jury's verdict. The district court declined to grant the City and Schimeck any relief. Discerning no error, we affirm.

## I.

Strickland is a black sergeant with the Detroit Police Department ("DPD"). On January 22, 2017, shortly after his shift ended, Strickland drove to a gas station to pick up food. Unbeknownst to him, someone had reported a suspicious package in the gas station parking lot.

Before Strickland reached the gas station, DPD police officers Casey Schimeck and Lawrence Blackburn arrived at the scene and saw what looked like an explosive device near the gas pumps. They notified their supervisor, Sergeant Rodney Ballinger, who arrived soon after. Using binoculars, the officers determined that the explosive device was a hand grenade.

Based on the nature of the threat, the officers parked their vehicles away from the gas station. It was very foggy that morning. So as Strickland approached, he did not see any emergency vehicles or barriers blocking off the gas station. Strickland parked near the gas station entrance and exited his car. As he did so, Schimeck, Blackburn, and Ballinger began yelling profanities and shouted at Strickland to leave. None of the officers identified themselves as police and, because of the thick fog, Strickland could not see who was yelling at him until the officers came closer. Once Strickland realized they were police, he identified himself as a fellow officer.[1]

Strickland testified that Ballinger continued yelling profanities at him and told him to put his hands on the car. Confused and frightened by the officers' actions, Strickland complied with Ballinger's orders. Then Ballinger took Strickland's hands from the car and put him in handcuffs. When Strickland expressed his confusion about what was happening, Ballinger responded with more profane and demeaning language. As Ballinger walked Strickland from the gas station to the police car, he told Strickland, "I'm going to charge you with every . . . thing I can. You should have . . . left when I told you to." R. 94, PageID 1636. Once at the police car, Ballinger told Schimeck to watch Strickland and then walked away.

Around this time, Strickland started complaining that the handcuffs were too tight. When Ballinger handcuffed Strickland, he failed to double lock the handcuffs, a feature that prevents them from tightening. Schimeck, following Ballinger's orders, approached Strickland and took

---

[1] At the time of the incident, Strickland had not yet been promoted to sergeant.

hold of the handcuffs. Strickland testified that he explained that the handcuffs were too tight, that he should not be in handcuffs, and that he was a police officer. Schimeck denied hearing Strickland say that the handcuffs were too tight.[2] But she did hear him say that he was a police officer and she responded, "I don't care." *Id.* at 1638. Blackburn, who was standing near Schimeck, heard Strickland say the handcuffs were too tight. He motioned to Schimeck, who let go of the handcuffs and stepped away. After Strickland repeated that the handcuffs were too tight, Blackburn loosened them.

About fifteen minutes later, Captain Mark Bliss arrived at the scene. Bliss told the officers to remove Strickland's handcuffs. As Bliss walked Strickland back to his car, Bliss told him, "[t]his goes nowhere from tonight." *Id.* at 1640. Strickland replied, "It's no way that what happened is not going anywhere from tonight." *Id.* Then Bliss responded that if Strickland said anything, there would be consequences. Strickland took this to mean that DPD would "sweep everything that happened underneath the rug, they wouldn't mention it, and that it will be like nothing ever happened." *Id.* at 1640–41.

Following the gas station incident, Strickland filed an equal employment opportunity ("EEO") complaint alleging discrimination based on race and retaliation. In sum, his EEO complaint alleged that Ballinger, Blackburn, and Schimeck mistreated him during the gas station incident. In response to the EEO complaint, DPD's internal affairs unit began investigating the incident. Though Strickland believed Bliss should have been the one to open an investigation into the incident, Bliss never did.

---

[2] Though Schimeck testified at trial that she did not hear Strickland complain that the handcuffs were too tight, she stated in her deposition testimony that she heard him say that the handcuffs were hurting and causing him discomfort.

After Strickland filed his EEO complaint, the City began taking retaliatory actions against him. In fact, DPD trained its investigation on Strickland. For example, Strickland testified that during the investigation, DPD asked him to submit to a *Garrity* interview. A *Garrity* interview requires an officer to answer questions about a particular incident under oath. At the beginning of the interview, DPD told Strickland that he was not the focus of the investigation. Yet it proceeded to question him about his own conduct in the days following the incident. In particular, DPD questioned him about trips he took to the gas station to review video footage of the incident. At trial, Strickland admitted that he went to the gas station while on duty and that he failed to document or notify his command about his visits. Also, as part of the investigation, DPD followed Strickland and videotaped him while he exercised at the gym, presumably to verify whether he had suffered an injury from the handcuffing.

DPD later proposed suspending Strickland for ten days because of his conduct following the gas station incident. The charged misconduct included: using his authority or position for financial gain or to obtain privileges or favors; failure to secure and/or control property as required; withholding information relative to suspicious persons or places, or any occurrence or circumstances, bearing on crimes or attempted crimes; and neglect of duty for failing to complete an activity log. Strickland appealed the charges. On review, DPD sustained only the abuse-of-authority charge and reduced the ten-day suspension to three days. Strickland testified that a white officer present at the gas station, Steven Murdock, also failed to complete an activity log for the incident. Yet DPD never charged Murdock with misconduct.

Strickland sued the City, Schimeck, and several other officers. He asserted several claims, including hostile work environment and retaliation, in violation of Title VII of the Civil Rights Act of 1964, and unconstitutional use of excessive force, in violation of 42 U.S.C. § 1983. After

the district court granted summary judgment to the defendants on all claims, we reversed in part and remanded the excessive-force claim against Schimeck and the retaliation claim against the City. *Strickland v. City of Detroit*, 995 F.3d 495, 516 (6th Cir. 2021).

The parties proceeded to trial and the jury found in Strickland's favor on both claims. About two weeks after trial, the district court denied motions for judgment as a matter of law that the City and Schimeck made during the trial. After trial, the City and Schimeck filed a renewed motion for judgment as a matter of law or for a new trial. The district court denied the motion. The City and Schimeck timely appealed.

**II.**

The City and Schimeck challenge the district court's denial of their renewed motion for judgment as a matter of law or a new trial. We review the "denial of a renewed motion for judgment as a matter of law de novo." *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005) (emphasis and internal quotation marks omitted). Courts should grant judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). In reviewing the motion, we do "not weigh the evidence, question the credibility of witnesses, or substitute our own judgment for that of the jury." *Schlosser v. VRHabilis, LLC*, 113 F.4th 674, 683 (6th Cir. 2024) (quotation omitted). Instead, viewing the evidence presented at trial in the light most favorable to the non-moving party and making all reasonable inferences in its favor, we must determine whether "reasonable minds could come to but one conclusion in favor of the moving party." *Id.* (quoting *Balsley v. LFP, Inc.*, 691 F.3d 747, 757 (6th Cir. 2012)). In addition, we give "substantial deference" to the jury's verdict. *Id.* (quoting *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 510 (6th Cir. 2016)).

As for a motion for a new trial, a court may grant such a motion "after a jury trial, for any reason for which a new trial has [previously] been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). This includes when a verdict is against the "weight of the evidence" or when the trial was "unfair to the moving party in some fashion." *Mitchell v. Boelcke*, 440 F.3d 300, 303 (6th Cir. 2006) (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir. 1996)). We review the denial of a motion for a new trial for an abuse of discretion. *Mys v. Mich. Dep't of State Police*, 886 F.3d 591, 599 (6th Cir. 2018). And so, we will reverse the district court only if "we have a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (internal quotation marks omitted).

**A.**

The City argues Strickland did not present enough evidence for the jury to find that it retaliated against him for filing his EEO complaint. We disagree.

A plaintiff relying on circumstantial evidence must establish a prima facie case of retaliation using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). To do so, the plaintiff must show by a preponderance of the evidence that: (1) he engaged in protected activity under Title VII; (2) the defendant knew about his protected activity; (3) the defendant took an adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action. *Id.* (citation omitted). Upon establishing a prima facie case, the burden shifts to the defendant to identify a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant provides such a reason, then the burden shifts back to the plaintiff to show pretext, or in other words, that the defendant's identified reason "was not the true reason for the

employment decision." *Id.* (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)).

The City suggests that Strickland did not establish all four elements of a prima facie case of retaliation. But the City waived this argument by failing to raise it in its initial and renewed motions for judgment as a matter of law. *See* R. 99, PageID 2092 ("Plaintiff was only required to prove the element of pretext of his retaliation claim, after the Sixth Circuit Court held that he had already established a prima facie case under the McDonnel [sic] Douglas test."); *see also Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 605 (6th Cir. 2018) (finding argument waived on appeal because the defendant never raised it in its Rule 50(a) motion).

Besides, the prima facie case does not matter after a defendant loses a jury trial. "[A] defendant appealing a jury verdict in a Title VII case may not rely on the argument that the plaintiff failed to prove a prima facie case." *Barrow v. City of Cleveland*, 773 F. App'x 254, 261 (6th Cir. 2019); *accord Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545–46 (6th Cir. 2008). We consider instead the "ultimate question": whether Strickland, when viewing the facts in the light most favorable to him, provided sufficient evidence for the jury to determine that the real reason the City disciplined him was his protected activity. *See Imwalle*, 515 F.3d at 545–46. This analysis involves looking at "the totality of the evidence in the record." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 494–95 (6th Cir. 2010); *Imwalle*, 515 F.3d at 546 ("In reaching our determination on the ultimate question of retaliation, we may review all of the evidence in the record." (internal quotation marks omitted)).

In this case, pretext is central to the ultimate question of whether a reasonable jury could find that the City disciplined Strickland because of his EEO complaint. A plaintiff can prove pretext by showing that the defendant's proffered reason: "(1) had no basis in fact; (2) was

insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 515 (6th Cir. 2021) (quotation omitted). Though these are common ways to show pretext, they are not the *only* ways. *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). Instead, "these three categories are simply a convenient way of marshaling evidence and focusing it on the ultimate inquiry: did the employer [take the adverse employment action against] the employee for the stated reason or not?" *Id.* (internal quotation marks omitted). Accordingly, the key question for pretext is: was Strickland's misconduct the real reason the City suspended him? The jury answered "no" to this question when it reached a verdict in Strickland's favor. That decision was reasonable based on the trial evidence.

To be sure, the City had a legitimate, nondiscriminatory reason for disciplining Strickland. He violated DPD policy when he used his position to obtain video footage from the gas station. *See McLaughlin v. Fifth Third Bank, Inc.*, 772 F. App'x 300, 302–03 (6th Cir. 2019) (opining that the plaintiff's violation of work policy was a legitimate, nondiscriminatory reason for her termination). And Strickland testified that his actions warranted discipline. That said, for the following reasons, Strickland provided enough evidence for a jury to find that his misconduct "did not actually motivate" the suspension. *See Briggs*, 11 F.4th at 515.

First, Strickland testified that Bliss warned him to not report the incident and that there would be consequences if he did. Strickland took this statement to mean that DPD would "sweep everything that happened underneath the rug, they wouldn't mention it, and that it will be like nothing ever happened." R. 94, PageID 1640–41. Indeed, Strickland testified that Bliss never requested an investigation into the gas station incident, even though Bliss was expected to do so. This led Strickland to believe that the City charged him with misconduct because he defied Bliss

when he filed a complaint against the other officers. The City did not present any testimony or other proof to rebut Strickland's testimony. Thus, it was reasonable for the jury to infer from Strickland's unrefuted testimony that the City's investigation into his conduct and subsequent discipline could have been the consequences that Bliss referenced.

Second, Ballinger told Strickland the night of the gas station incident that he would "charge [Strickland] with every . . . thing [he could]." *Id.* at 1636. Not long after, DPD did in fact charge Strickland with several instances of misconduct related to the gas station incident. At first, the City charged Strickland with four instances of misconduct, including failure to complete an activity log. Strickland testified that a white police officer, Steven Murdock, also failed to complete an activity log for the same incident—but the City did not investigate or bring charges against Murdock.

Strickland also testified that after he filed his EEO complaint, the City retaliated in other ways. For instance, DPD asked him to submit to a *Garrity* interview. At the beginning of the interview, DPD told him he was not the focus of the investigation. Yet once Strickland was under oath, the City started questioning him about his own conduct after the gas station incident. The City then used the information it learned during the interview to charge him with misconduct. DPD also followed Strickland and videotaped him while he was out on leave. Strickland testified that this conduct was unusual.

And finally, the timing of events also supports a finding of pretext. Strickland filed his EEO complaint on January 24, 2017. DPD issued a notice of discipline to Strickland in July 2017. After Strickland appealed the notice of discipline, DPD mitigated the charges and suspended Strickland. Temporal proximity can be a "strong indicator" of pretext when accompanied by other supporting evidence. *Briggs*, 11 F.4th at 516 (quotation omitted). Of course, the temporal

proximity inference becomes weaker as more time passes between the protected activity and the adverse action. And as the City emphasizes, Strickland engaged in intervening misconduct. Even so, timing is still relevant to evaluating pretext, even if it is not determinative. *Cf. id.*; *Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 256 (6th Cir. 2023). Here, shortly after Strickland filed his EEO complaint, DPD started taking retaliatory actions, such as focusing its investigation on him; using the *Garrity* interview to learn about his conduct after the gas station incident; and recording him while he exercised at the gym. Only a few months later, DPD charged him with misconduct arising from the very incident his EEO complaint centered upon. The timing of events therefore could support a finding of pretext.

The City argues that Strickland did not show pretext because he failed to establish that Bliss influenced the disciplinary process. True, it is unclear what role, if any, Bliss had in Strickland's discipline. But Strickland was not required to make this showing to succeed on his retaliation claim—instead, Strickland had to show by a preponderance of the evidence that the City disciplined Strickland because of his EEO complaint. *See Imwalle*, 515 F.3d at 545–46. And Bliss's comments cast doubt on the City's proffered reason for disciplining Strickland. Ultimately, it was up to the jury to consider the credibility of Strickland's testimony and to determine how much weight to give Bliss's statements. *See id.* at 551.

The City also contends that Strickland failed to prove that Murdock was similarly situated to him. At the pretext stage, a plaintiff relying on comparator evidence must show that he and the proposed comparator engaged in "substantially identical conduct." *Miles*, 946 F.3d at 893–94. Admittedly, the parties put forth little evidence at trial about Murdock's conduct. That said, Strickland did testify that he and Murdock both failed to complete an activity log. And while DPD investigated and charged Strickland in part for the conduct, it did not investigate or charge

Murdock.[3]  Strickland's testimony also suggested that both he and Murdock held the same position, and that DPD required them both to complete activity logs.  This evidence remained unrefuted at trial.  Thus, viewing the evidence in the light most favorable to Strickland, a reasonable juror could infer from Strickland's testimony that he was similarly situated to Murdock.

Additionally, the City argues that Strickland's misconduct following the gas station incident precludes a finding of pretext.  That argument misses the mark.  As mentioned, one way a plaintiff can show pretext is by proving that the defendant's proffered reason did not actually motivate the adverse action.  *Briggs*, 11 F.4th at 515.  In doing so, the plaintiff "admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate [the adverse employment action] but attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant."  *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (internal quotation marks omitted).  Thus, Strickland's own misconduct does not prevent him from establishing pretext by proving that his misconduct was not the true reason the City disciplined him.

All in all, Strickland presented sufficient evidence for a jury to find that the City's reason for disciplining Strickland was pretextual.

And this conclusion aligns with our precedent.  In *Spengler*, we found sufficient evidence of retaliation when the plaintiff provided evidence that: (1) the defendant selectively enforced the policy it relied on to take the adverse action; (2) the plaintiff was a valuable employee when the

---

[3] Strickland admitted at trial that the City did not suspend him for failing to complete an activity log.  Still, DPD investigated and charged him for it.  As a result, evidence that DPD treated Murdock differently regarding the activity log is relevant to whether Strickland's misconduct was the real reason the City disciplined him.

defendant fired him; and (3) the defendant's attitude toward the plaintiff changed following the plaintiff's protected activity. 615 F.3d at 493–95. In *Imwalle*, the defendant claimed that it terminated the plaintiff for alleged poor performance. 515 F.3d at 546. We found sufficient evidence of retaliation when the plaintiff offered evidence that: (1) his supervisors were satisfied with his performance; (2) his boss made statements about his EEO complaint just before firing him; (3) the defendant fired him only three months after filing his EEO complaint; and (4) he experienced an "atmosphere of retaliation" after filing his complaint. *Id.* at 546–51.

Strickland provided evidence that: (1) Bliss warned him not to tell anyone about the gas station incident; (2) the City began investigating Strickland's own conduct after he filed an EEO complaint; (3) the City treated Strickland and a white employee differently; (4) Strickland experienced an atmosphere of retaliation after filing his EEO complaint, including the questioning during his *Garrity* interview and surveillance of his activities while he was on leave; and (5) the City's retaliatory actions began shortly after Strickland filed his complaint.

Viewing the totality of the evidence in the light most favorable to Strickland and giving deference to the jury's decision, a reasonable jury could find that the City disciplined Strickland because of his protected activity. And the jury's verdict is not against the weight of the evidence. Therefore, the district court did not err in denying the City's motion for judgment as a matter of law and motion for a new trial on the retaliation claim.[4]

---

[4] In their appellate brief, the City and Schimeck included a paragraph identifying the legal standard for granting a remittitur. They did not, however, make any argument in support of a remittitur. Consequently, this argument is forfeited. *See Cockrun v. Berrien County*, 101 F.4th 416, 419 (6th Cir. 2024).

**B.**

Schimeck contends that insufficient evidence supported the jury's verdict on Strickland's excessive-force claim. But it was reasonable for the jury to conclude that Schimeck used excessive force when handcuffing Strickland.

It is undisputed that Strickland had a clearly established constitutional right to be free "from excessively forceful or unduly tight handcuffing." *Strickland*, 995 F.3d at 508 (quoting *Baynes v. Cleland*, 799 F.3d 600, 613 (6th Cir. 2015)). To prove his excessive-force claim, Strickland had to show that "(1) he complained the handcuffs were too tight; (2) Officer Schimeck ignored his complaint; and (3) he experienced 'some physical injury' resulting from the handcuffing." *Id.* (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009)).

On appeal, Schimeck contests only the some-physical-injury element. She argues that Strickland offered insufficient evidence for the jury to find that he experienced a physical injury from the handcuffing. Specifically, Schimeck contends that Strickland needed to show an "objective injury." *See Jackson v. Lubelan*, 657 F. App'x 497, 501–02 (6th Cir. 2016). But all he had to prove was that he experienced "some physical injury." *Strickland*, 995 F.3d at 508 (quotation omitted). And we have long held that this showing "is not demanding" and that testimony about bruising or pain can create a fact dispute for a jury to resolve. *See, e.g.*, *Hughey v. Easlick*, 3 F.4th 283, 290–91 (6th Cir. 2021); *Morrison*, 583 F.3d at 403; *Baynes*, 799 F.3d at 609. The jury did just that in this case.

Strickland testified that his wrists were a "purple, bluish color" from the tight handcuffs. R. 94, PageID 1680. He explained that the handcuffs caused him pain and a tingling sensation in his fingers. He also provided a medical report from Dr. Gayani Fonseka confirming that he complained of bilateral wrist pain and that he had a "wrist injury from pressure." *Id.* at 1651.

Consequently, based on Strickland's testimony and the supporting documentation from his doctor, it was reasonable for the jury to find that Strickland experienced "some physical injury" from the handcuffing. Thus, the district court did not err in denying the motion for judgment as a matter of law or a new trial on Strickland's excessive-force claim.

**C.**

Finally, the City argues that we should order a new trial on the retaliation claim because of an alleged "irregularity" at trial. D. 21 at p.48. We can order a new trial when a trial was "unfair to the moving party in some fashion." *Mitchell*, 440 F.3d at 303 (quotation omitted). During trial, the City moved for judgment as a matter of law on Strickland's retaliation claim, arguing that Strickland failed to show pretext. The district court took the motion under advisement and stated, "I think if we're looking at the established elements for showing pretext that the Plaintiff doesn't show it, but there is extraneous evidence. I'm going to let it go to the jury and see what they do, but I'll keep the motion under advisement." R. 95, PageID 1836. The City claims it decided not to call several witnesses because of the district court's statement. It therefore argues that its "trial strategy was prejudicially altered" by the district court's comment. D. 21 at pp.48–49.

We fail to see how the district court prejudiced the City. The district court did not grant the City's motion. And contrary to the City's arguments, the district court did not state that Strickland failed to show pretext. True, the district court indicated that it did not think Strickland had shown the three common ways for establishing pretext. But then the court mentioned that other evidence could point to pretext. In line with this statement, the district court explained that the jury would decide the retaliation claim. That the City chose not to offer proof during its case-in-chief on the retaliation claim—despite no ruling on the motion and the district court's statement that the issue would go to the jury—does not now warrant a new trial.

The City relies on *Lutz v. Commissioner of Internal Revenue* to support its argument. 593 F.2d 45 (6th Cir. 1979). But that case is distinguishable. In *Lutz*, the trial court recessed during trial and called counsel to its chambers. *Id.* at 45. The court told counsel that the government witness was "terrible" and that the government should concede. *Id.* Yet at the end of the trial, the court ruled largely in the government's favor and asserted that the government witness was "thoroughly credible." *Id.* at 45–46. On appeal, the plaintiff's counsel argued that he altered his trial strategy and did not call additional witnesses to rebut the government witness's testimony because of the court's statement. *Id.* at 46. We reversed and remanded for a new trial, finding that the court "all but told [the plaintiff's counsel] that he was going to win." *Id.*

In *Lutz*, the trial court was the sole decisionmaker. Consequently, plaintiff's counsel reasonably relied on the court's statements and changed his trial strategy as a result. Here, though, the district court advised the parties that it would take the motion for judgment as a matter of law under advisement. The district court did not "all but t[ell]" the City that it would win on the retaliation claim or say that Strickland should concede. *See id.* Instead, its statement conveyed that pretext was still a contested issue for the jury to decide. The district court did not err in the way it conducted the trial.

### III.

For these reasons, we **AFFIRM** the district court's judgment.